IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DARRELL HOWARD #273024,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) NO. 3:23-cv-00486 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| **JOHN DOE, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM

Plaintiff Darrell Howard, currently confined at Turney Center Industrial Complex, filed a pro se civil rights complaint under 42 U.S.C. § 1983 regarding the conditions of confinement at his prior place of confinement, Trousdale Turner Correctional Center. (Doc. No. 1). Plaintiff also filed an application to proceed as a pauper. (Doc. No. 2). This case is before the Court for initial review. As explained below, this case may go forward against certain Defendants. Plaintiff should consult the accompanying Order for further instructions.

## I. APPLICATION TO PROCEED AS A PAUPER

An inmate may bring a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). It appears that Plaintiff cannot pay the full fee in advance. (*See* Doc. No. 5 at 2). Accordingly, Plaintiff will be granted pauper status and assessed the $350.00 fee. 28 U.S.C. § 1915(b).

## II. INITIAL REVIEW

The Court must dismiss the Complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c). The Court must also hold the Complaint to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

**A. Allegations**

This case arises from an alleged assault of Plaintiff by other inmates at Trousdale Turner Correctional Center (TTCC). Plaintiff sues CoreCivic (the private entity contracted to manage TTCC)[1] and four TTCC officials: a John Doe correctional officer ("CO John Doe"), Correctional Officer Alias Haagenson ("CO Haagenson"), Warden Brandon Watwood, and Warden Norman. (Doc. No. 1 at 1, 3). Liberally construing the Complaint in Plaintiff's favor, he alleges as follows.

In October 2022, Plaintiff moved to a new housing pod to be a "rock man" (an inmate who performs janitorial duties and assists staff with certain tasks) for a segregation unit. (*Id.* at 4). About two weeks later, an auditor with the Tennessee Department of Correction told Plaintiff that he was not supposed to be living in a segregation unit unless he was in protective custody or punitive segregation. (*Id.*). Over the next three months, Wardens Watwood and Norman directed Plaintiff's status be changed four times so he could work as a rock man in the segregation unit. (*Id.*). Plaintiff believes that CoreCivic (through Watwood and Norman) changed his status so much to enable him to work as a rock man despite being housed in an improper cell. (*Id.*).

Plaintiff was housed in the segregation unit when, during the evening of February 11, 2023, CO John Doe allowed four inmates to leave an adjacent housing pod and enter Plaintiff's pod. (*Id.* at 5). The inmates began assaulting Plaintiff in his sleep. (*Id.*). Over the next thirty minutes, Plaintiff was stabbed thirteen times, strangled with a lamp cord, and had his left thumb cut off. (*Id.*). An assailant finally notified an officer that "they were done," and Plaintiff was removed from his cell. (*Id.*). About ten minutes later, Plaintiff was sent to medical and then the hospital. (*Id.*).

After four days at the hospital, Plaintiff returned to TTCC. (*Id.*). A lieutenant allowed him to review camera footage related to the assault. (*Id.*). Plaintiff saw that, the morning on the assault,

---

[1] The Court takes judicial notice of this fact. *See* https://www.tn.gov/correction/sp/state-prison-list/trousdale-turner-correctional-center (last visited May 26, 2023); Fed. R. Evid. 201(b).

the four assailants jammed their cell door when a TTCC officer opened the door to allow them to set out a cooler. (*Id.*). Plaintiff further observed that, about an hour before the assault that evening, CO John Doe "open[ed] the pass door connecting" the assailant's pod to Plaintiff's pod. (*Id.*). And Plaintiff saw that, moments before the assault, CO John Doe opened Plaintiff's cell door. (*Id.*).

During the assault, CO John Doe and inmate Zackary Allen were serving chow in Plaintiff's pod. (*Id.* at 6). Allen told CO Doe about the assault, but Doe did not respond; indeed, Doe walked past Plaintiff's cell while the assailants were stabbing Plaintiff and did nothing. (*Id.*). Allen then informed CO Haagenson about the assault, but Haagenson did not respond either. (*Id.*).

**B. Legal Standard**

On initial review, the Court applies the Rule 12(b)(6) standard. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations [] as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

**C. Analysis**

To state a Section 1983 claim, a plaintiff must allege "that a defendant acted under color of state law" and "that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations omitted).

1. <u>Claims Going Forward Against CO John Doe and CO Haagenson</u>

Plaintiff sues COs John Doe and Haagenson in their individual capacities. (Doc. No. 1 at 1).[2] He alleges that, about an hour before being severely assaulted in his cell by four inmates, CO

---

[2] "[A]n individual-capacity claim seeks to hold an official personally liable for the wrong alleged," while "[a]n official-capacity claim against a person is essentially a claim against the" entity the person represents. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Essex v. Cnty. of*

3

John Doe opened a door connecting the assailants' housing pod to Plaintiff's housing pod. Plaintiff further alleges that, moments before the assault, CO John Doe opened Plaintiff's cell door. And Plaintiff alleges that both CO John Doe and CO Haagenson declined to intervene during the thirty-minute assault after another inmate brought it to their attention. Accepting these allegations as true, Plaintiff states two claims against CO John Doe and one claim against CO Haagenson.

The first claim against CO John Doe pertains to the occurrence of the assault itself. It is reasonable to infer from Plaintiff's allegations that CO John Doe was deliberately indifferent to a heightened risk of harm created by opening Plaintiff's cell door moments before four inmates from another housing pod entered and assaulted him. That suffices to state an Eighth Amendment failure-to-protect claim. *See Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 726 (6th Cir. 2022) ("A prison official violates an inmate's rights [to be protected from violence at the hands of other prisoners] only if the official is 'deliberate[ly] indifferen[t] to inmate health or safety.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994))). And given the sequence of actions alleged by Plaintiff—opening a connecting door between pods about an hour before the assault and then opening Plaintiff's cell door moments before the assault—it is also reasonable to infer that CO John Doe may have deliberately targeted Plaintiff for a use of force. That suffices to state an Eighth Amendment excessive force claim. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) ("Although prison discipline may require that inmates endure relatively greater physical contact, the Eighth Amendment is nonetheless violated if the 'offending conduct reflects an unnecessary and wanton infliction of pain.'" (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995))). Either way, Plaintiff may proceed with a claim against CO John Doe based on the occurrence of the alleged assault.

---

*Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013)). Plaintiff sues Wardens Watwood and Norman in their official capacities (Doc. No. 1 at 1), and those claims will be address below.

4

As to the second claim against CO John Doe, it is the same as the sole claim against CO Haagenson. Each officer is alleged to have permitted the thirty-minute-long assault to continue after it was brought to his attention by another inmate. That allegation states an Eighth Amendment failure-to-intervene claim against COs John Doe and Haagenson. *See Richko v. Wayne Cnty., Mich.*, 819 F.3d 907, 919 (6th Cir. 2016) (applying Eighth Amendment standard to allow failure-to-intervene claim against jail official who, some evidence suggested, failed to promptly respond to an ongoing inmate-on-inmate attack of which the jailer had notice).

    2. <u>Dismissal of Warden Watwood, Warden Norman, and CoreCivic</u>

Plaintiff sues Wardens Watwood and Norman in their official capacities. These official-capacity claims are equivalent to claims against CoreCivic—the entity that the Wardens represent. *See Peatross*, 818 F.3d at 241. Because CoreCivic is separately named as a Defendant, the claims against Wardens Watwood and Norman will be dismissed as redundant.[3] *See J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 723 n.4 (6th Cir. 2020) ("The district court correctly dismissed these official capacity claims as superfluous of the claim against the county." (citing *Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014))).

---

[3] Even if Plaintiff had brought individual-capacity claims against the Wardens, he would fail to state a claim against them. The only alleged personal involvement by the Wardens is directing Plaintiff's status to be changed so Plaintiff could be a rock man in the segregation unit. But that allegation does not lend itself to a reasonable inference that the Wardens were personally aware that placement in the segregation unit put Plaintiff at an excessive risk to his safety, as required to state a claim for a violation the Constitution. *See Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) ("[A] prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." (citing *Farmer*, 511 U.S. at 841–42 (1994))). Plaintiff likewise has not alleged sufficient personal involvement to hold the Wardens liable under a theory of supervisory liability. *See Peatross*, 818 F.3d at 241 ("[S]upervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999))). What Plaintiff alleges by the Wardens is, fundamentally, a violation of TDOC policy, but a violation of state policy "is insufficient alone to make a claim cognizable under [Section] 1983." *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010).

To state a Section 1983 claim against a private entity like CoreCivic, Plaintiff must allege that (1) he experienced a violation of his constitutional rights and (2) that constitutional violation was directly caused by a "policy or custom" of the private entity. *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)). The Court liberally construes the Complaint to allege that CoreCivic has a policy or custom of enabling prisoners to work in a housing section where they are not otherwise authorized to reside by directing prison officials to make unwarranted changes to the prisoner's status. But it is not reasonable to infer that this alleged policy or custom directly caused the asserted constitutional violations—violations premised on the occurrence of and failure to intervene in an inmate-on-inmate assault. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("[A] plaintiff must show that the [private entity's] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [entity's] action and the deprivation of federal rights."). Plaintiff, therefore, fails to state a claim against CoreCivic.

### III. CONCLUSION

For these reasons, Plaintiff will be granted pauper status and he may proceed with the following individual-capacity Eighth Amendment claims: a claim against CO John Doe for failure to protect and/or excessive force based on the occurrence of the alleged assault on February 11, 2023; and a claim against CO John Doe and CO Haagenson for failing to intervene during the alleged assault. All other claims and Defendants will be **DISMISSED**.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

6